## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVIA ROEGIERS, *PPA* JEREMY ROEGIERS AND KRISHNA ROEGIERS *Plaintiff* | : | Case No. 3:21-cv-1034 (OAW) |
| | : | |
| *v.* | : | |
| | : | |
| UNITED STATES OF AMERICA *Defendant/Third-Party Plaintiff* | : | |
| | : | |
| *v.* | : | |
| | : | |
| LAWRENCE AND MEMORIAL HOSPITAL, INC.; GAUTHAMI SOMA, M.D. *Third-Party Defendants* | : | |

## <u>OMNIBUS RULING</u>

**THIS ACTION** is before the court upon two motions: 1) Motion to Dismiss the Government's Apportionment Complaint, ECF No. 28; and 2) Third-Party Defendants' Motion to Dismiss, ECF No. 37.  With regard to each, the court has reviewed the motions themselves, ECF No. 28, 37, the respective parties' opposition thereto, ECF No. 33, 38, and Third-Party Defendants' replies to Plaintiff's oppositions, ECF No. 36, 41, as well as the record in this case.  For the reasons discussed herein, the motions are **<u>GRANTED</u>**.

Plaintiff Olivia Roegiers, through her parents Jeremy and Krishna Roegiers ("Plaintiff"), brought this medical malpractice action against the United States of America ("government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 *et seq.*, alleging injuries sustained as a result of negligence by a federal naval clinic doctor. *See* Compl., ECF No. 1.  In response, the government has named Lawrence & Memorial Hospital ("Hospital") and Dr. Gauthami Soma, M.D. ("Dr. Soma") as third-party defendants

1

(together, "Defendants").[1]  *See* Third Party Compl., ECF No. 17.  Defendants have moved to dismiss the government's third-party apportionment complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  *See* Third-Party Def.'s Mot. to Dismiss, ECF No. 28.

Subsequent to the government's third-party complaint, Plaintiff separately filed a complaint against Defendants.  *See* Pl.'s Claim Against Third Party Def., ECF No. 30. Defendants have moved to dismiss Plaintiff's claim for untimeliness, pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Third-Party Defs.' Mot. to Dismiss, ECF No. 37.

## I.    <u>BACKGROUND</u>

On September 10, 2018, Plaintiff Olivia Roegiers was born at the Hospital in New London, Connecticut.  Compl. at Facts ¶ 1, ECF No. 1.  She was discharged on September 12, 2018; at that time, she had a total bilirubin level of 8.8 mg/dL and a direct bilirubin level of 2.0 mg/dL.[2]  *Id.* at ¶ 2.  The next day (on September 13, 2018), pediatrician and federal employee, Dr. Christina Toufexis, M.D., examined Plaintiff at the federal Navy Health Clinic in Groton, Connecticut ("Naval Clinic").  *Id.* at ¶¶ 3–4.  At that examination, Plaintiff reportedly had a total bilirubin level of 10.4 mg/dL, and her skin showed no jaundice.  *Id.* at ¶ 6.  On September 27, 2018, Dr. Toufexis again examined Plaintiff, and again reported no signs of jaundice.  *Id.* at ¶ 7.

---

[1] The court notes that the Hospital and Dr. Soma are third-party defendants while the government is the named defendant and third-party plaintiff.  For ease of reference throughout this ruling, however, the court will refer to the Hospital and Dr. Soma as "Defendants."

[2] Bilirubin is a byproduct that is made during the breakdown of red blood cells.  *See Bilirubin Test*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/bilirubin/about/pac-20393041 [https://perma.cc/Q7JG-P7EJ] (last visited Sept. 15, 2023).  Usually, bilirubin levels are tested in order to check the health of the liver, as high bilirubin levels can indicate liver disease or damage.  *Id.*  Elevated bilirubin can produce jaundice (a yellowing of the skin or eyes).  *Id.*

The next time Plaintiff was seen by Dr. Toufexis was on November 13, 2018.  *Id.* at ¶ 8.  A notation of "+jaundice" was made at this visit, and Dr. Toufexis ordered exams for unspecified jaundice with a note to follow up about the results of the lab tests.  *Id.*  On November 21, 2018, Plaintiff went to the Hospital laboratory, and left with a visit diagnosis of chronic cholestatic jaundice syndrome.  *Id.* at ¶ 9.  The results of Plaintiff's lab tests showed a total bilirubin level of 8.2 mg/dL and a direct bilirubin level of 6.91 mg/dL.  *Id.* at ¶ 10.  Dr. Toufexis's office received the lab results on November 23, 2018.  *Id.* at ¶ 11. There was no documented follow-up to Plaintiff's family by Dr. Toufexis or the Naval Clinic about the lab results, or the findings from the November 13, 2018, exam.  *Id.* at ¶ 11.

Plaintiff was not seen again by Dr. Toufexis until a well-check visit on January 23, 2019, more than two months after her prior exam.  *Id.* at ¶ 12.  At this visit, Plaintiff's mother was concerned about an extended belly and belly button pushing out for two weeks.  *Id.*  Dr. Toufexis conducted an exam which revealed the following: "eyes: +icterns; skin: no jaundice; abdomen: distended, soft, non-tender; umbilical hernia discovery 1 cm reducible."  *Id.*  Plaintiff's bilirubin TCB was noted to be 7.6 mg/dL.[3]  Plaintiff was immediately referred to Hasbro Children's Hospital ("Children's Hospital").  *Id.* at ¶ 13.

At the Children's Hospital, intake documentation noted that Plaintiff had been referred by her primary-care physician's office based on increasing abdominal distention, jaundice, and the lab results from November 21, 2018, that showed the following: Alk phos 331, Alt 330, AST 359, total bilirubin 10.4, direct bilirubin 6.91, and albumin 2.7.  *Id.* at ¶ 14.  Plaintiff's mother did not know about the lab results from November 21, 2018,

---

[3] TCB, or transcutaneous bilirubin measurement, is another way to measure bilirubin levels in infants.  *What are Jaundice and Kernicterus?,* CDC, https://www.cdc.gov/ncbddd/jaundice/facts.html [https://perma.cc/7T8P-ZFV2] (last visited Sept. 15, 2023).  This method involves checking a baby's bilirubin levels by using a light meter that is placed on the baby's head.  *Id.*

until January 23, 2019.  *Id.*  On January 24, 2019, Plaintiff began a liver transplant evaluation, which continued at Yale-New Haven Hospital; there, she underwent additional testing.  *Id.* at ¶ 15.  Eventually, Plaintiff was approved for a liver transplant, and she underwent surgery on or about November 1, 2020.  *Id.*

Plaintiff alleges that Dr. Toufexis was negligent at various phases: in failing to refer Plaintiff to a pediatric gastroenterologist or pediatric liver transplant specialist; in failing to follow up with Plaintiff's family regarding the findings of jaundice or the lab results; and in failing to promptly investigate the possible diagnosis of biliary atresia.[4]  *Id.* at ¶ 16.  Plaintiff alleges that she was not properly evaluated, diagnosed (with biliary atresia), or treated (using the "Kasai" procedure[5]).  *Id.* at ¶ 17.  Additionally, Plaintiff alleges that, had Dr. Toufexis acted according to the standard of care, Plaintiff "probably would have been diagnosed in a timely fashion" so as to be afforded timely and necessary treatment (such as, with the Kasai procedure), which would have eliminated the need for the immediate liver transplant that ultimately, she had to undergo.  *Id.* at ¶ 18.

On July 28, 2021, Plaintiff filed the instant medical malpractice action against the government.  On June 30, 2022, the government filed a third-party complaint, asserting two counts for apportionment toward the Hospital and Dr. Soma.  *See* Third-Party Compl., ECF No. 17.  This apportionment complaint alleged that because Plaintiff was born at the Hospital, where she had bloodwork taken that indicated elevated direct bilirubin levels, and where she was discharged without any additional testing, follow-up medical care, or

---

[4] Biliary atresia is a condition in which children's bile ducts, the tubes that drain bile from the liver into the small intestine, are damaged, scarred, missing, blocked, or are not shaped correctly.  *Treatment for Your Child's Biliary Atresia: Kasai Procedure*, Saint Luke's, https://www.saintlukeskc.org/health-library/treatment-your-childs-biliary-atresia-kasai-procedure [https://perma.cc/N5CU-SUC9] (last visited Sept. 15, 2023).

[5] The Kasai procedure is the surgical treatment for biliary atresia, in which a surgeon will remove the problem bile ducts outside of the liver, and then attach the small intestine to the liver.  *Id.*

notification to her pediatrician at the Naval Clinic, any injuries suffered by Plaintiff may have been caused by the independent negligence of third-party Defendants.  *Id.* at ¶¶ 7–9, 23.  Defendants move to dismiss the government's third-party claims for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  *See* Mot. to Dismiss, ECF No. 28.  Following the government's apportionment complaint, Plaintiff filed her own complaint against Defendants.  *See* Pl.'s Claim Against Third Party Def., ECF No. 30.  Plaintiff's complaint against Defendants adopts most of the government's apportionment claim, alleging that the Hospital and Dr. Soma may have been independently negligent.  *See id.* ¶¶ 9, 20.  Defendants respond by moving to dismiss Plaintiff's third-party complaint.  *See* Third-Party Defs.' Mot. to Dismiss, ECF No. 37.

## II.   **STANDARD**

### A.   **Federal Rule of Civil Procedure 12(b)(2)**

When responding to a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  However, a plaintiff need persuade the court only that its factual allegations, if true, constitute a *prima facie* showing of jurisdiction.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990).  "A prima facie case [of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."  *Chirag v.*

*MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998)).

Pleadings and affidavits should be construed "in the light most favorable to [P]laintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85. The court will not, however, accept as true "a legal conclusion couched as a factual allegation," *Jazini*, 148 F.3d at 185, nor allegations "controverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Further, "the breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

### B.     Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a motion to dismiss, the court must draw all

reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## III.   DISCUSSION

### A.   Motion to Dismiss Government's Apportionment Claim

In their Motion to Dismiss the government's Apportionment Claim, Defendants assert that the government fails to comply with Connecticut General Statute § 52-102b, which requires that an apportionment complaint be served within 120 days of the return date specified in a plaintiff's original complaint.  Third-Party Defs.' Mot. to Dismiss 1, ECF No. 28.  The 120-day requirement applies "in any civil action to which section 52-572 applies"—*i.e.,* in any negligence action concerning the liability of multiple defendants, such as the instant case.[6]  Specifically, § 52-102b states as follows:

> A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability.  Any such writ, summons and complaint . . . shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint.

Because federal court complaints do not include a "return date," courts applying § 52-102b have used the date the summons was returned to the district court as the closest analog to the "return date" in Connecticut.  *Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-CV-650(VLB), 2012 WL 3779140, at *7 (D. Conn. Aug. 30, 2012).  Because the complaint was filed more than 120 days after the relevant date

---

[6] General Statute § 52-572h lists doctrines applicable in negligence actions involving multiple tortfeasors. Among other things, the statute prohibits the doctrine of contributory negligence, § 52-572h(b), from barring recovery, and it limits the liability of each tortfeasor to only that party's own "proportionate share of the recoverable economic damages," § 52-572h(c).

and because it is the "exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h," Defendants argue that this court lacks personal jurisdiction over them.  Third-Party Defs.' Mot. to Dismiss 3–4, ECF No. 28 (citing Connecticut General Statute § 52-102b(f)).

The government, however, contends that the motion to dismiss should be denied because the 120-day requirement within § 52-102b is a state procedural mechanism, and therefore does not apply in FTCA actions where the Federal Rules of Civil Procedure govern.  *See* Opp'n to Mot. to Dismiss Apportionment Compl. 1, ECF No. 33.  In addition, the government argues that § 52-102b conflicts with the Federal Rules of Civil Procedure. *Id.* at 15.

Defendants maintain that because § 52-102b is a substantive law rather than a procedural rule, the statute's 120-day rule governs suits brought in federal court under the FTCA.  *See* Reply to Third-Party Pl.'s Opp'n to Mot. to Dismiss Apportionment Compl. 1, ECF No. 36.  Further, Defendants contend that because the apportionment complaint was brought after the 120-day statute of limitations had elapsed, the government's apportionment claims against the Hospital and Dr. Soma must be dismissed as untimely. *Id* at 6.

### 1. *Federal Tort Claims Act*

The FTCA, subject to some exceptions, waives the sovereign immunity of the United States and provides a cause of action for property damage or personal injury caused by the negligence of any federal employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In FTCA

actions, state law is the source of substantive liability while the Federal Rules of Civil Procedure supply the procedural rules. *Corley v. United States*, 11 F.4th 79, 84–85 (2d Cir. 2021). Thus, a "state law will apply [in an FTCA action] only if it is substantive, rather than procedural, and districts courts applying state law in FTCA suits must determine as a threshold matter whether that law is substantive [or procedural]." *Id.* at 85. Here, § 52-102b will bar the government from impleading Defendants only if the statute is deemed to be a substantive law. If, however, the statute is deemed a procedural rule, the 120-day requirement for apportionment complaints would be inapplicable, and Defendants may be named as third parties for purposes of apportioning liability.

### 2.   *The Government's Apportionment Complaint*

In a case from within this district that is strikingly similar to the instant action, the court addressed the issue of whether § 52-102b is a substantive law or a procedural rule. *Est. of Nobile v. United States*, 193 F.R.D. 58, 61 (D. Conn. 2000). *Nobile* involved a medical malpractice action brought against the United States under the FTCA. *Id.* at 59. In that case, the government also chose to file an apportionment complaint against a hospital, Yale-New Haven Hospital ("YNHH"). *Id.* YNHH filed a motion to dismiss, arguing in the same fashion as Defendants do here, that the apportionment complaint is time-barred because it was filed more than 120 days after the return date specified on the original complaint, as required by § 52-102b. *Id.* at 60. The government countered by arguing, as it does here, that the time limitation in the statute is merely a state procedural time frame and inapplicable in federal court. *Id.* at 60–61.

The court (*Hon. Gerard Louis Goettel, J.*) adhered to "the rulings of the vast majority of State courts that the 120-period of Connecticut's apportionment statute is a

substantive and jurisdictional requirement." *Id.* at 61.   In doing so, the court noted the reasoning of state courts: "because the 120-day requirement of section 52-102b(a) is contained within a statute that creates a cause of action that did not exist at common law, then the remedy exists only during the prescribed period and the time limitation is not to be treated as an ordinary statute of limitations but rather as a limitation on the liability itself," as well as other analogous federal cases. *Id.* at 61.   The court then granted the motion to dismiss, noting further that by failing to comply with the 120-day service requirement, the government lost its substantive right to apportionment and, thus, lost its right to implead YNHH. *Id.*

In the years since *Nobile* was decided, there have been various decisions in both state and federal court that require an updated assessment of whether § 52-102b should be classified as a substantive or procedural for purposes of impleading a defendant in an FTCA action.   For example, four years after *Nobile*, the Supreme Court of Connecticut determined that the 120-day timeframe within § 52-102b is a strict limitation on the right to apportionment, and courts are without jurisdiction to authorize an extension on the time to file an apportionment complaint. *See Lostritto v. Cmty. Action Agency of New Haven, Inc.,* 269 Conn. 10, 35 (2004). *Lostritto* examined whether the 120-day requirement in § 52-102b is a mandatory pleading rule, or a directory rule for which courts may grant an extension of time. *Id.* at 13.   In determining that the statute is mandatory, the Supreme Court of Connecticut relied on three factors: (1) the language of the statute (which uses the term "shall" rather than "may"), (2) the legislative history of the statute (where prior versions consistently opted for strong, compulsory language), and (3) whether the time limitation in § 52-102b(a) was substantive or procedural. *Id.* at 21–26.   The court found

that § 52-102b is substantive because its enactment "gave life to the right to apportionment provided in § 52-572h" and therefore "confers rights that did not exist at common law." *Id.* at 26. The court further held that because § 52-102b "is a service provision by its express terms," the statute necessarily implicates a court's personal jurisdiction rather than subject matter jurisdiction. *Id.* at 33.

The United States Court of Appeals for the Second Circuit also has provided recent clarity on the applicability of state law in FTCA actions brought in federal court. *See Corley v. United States,* 11 F.4th 79, 82 (2d Cir. 2021). In *Corley*, the Second Circuit evaluated whether a different Connecticut statute, § 52-190a, is a procedural rule that is inapplicable in federal court or a substantive rule that applies pursuant to the FTCA. *Id*. In holding that the statute is a procedural rule, the court noted that "[a] rule that regulates pleading and service of process, and that has been expressly construed by the relevant state Supreme Court as having no effect on the standard for substantive liability, is a procedural rule[.]" *Id.* at 87.

Whether § 52-102b is a substantive or procedural law, in light of both *Lostritto* and *Corley*, remains the same as it did in *Nobile*: § 52-102b is a substantive law which applies in FTCA actions. As noted in *Lostritto*, the statute, in conjunction with § 52-572h, implements and limits a right that did not exist at common law: the right to apportionment. The government argues that because § 52-102b "has no bearing on the standard of liability or the types of evidence required in a tort case," and is "merely a state procedural mechanism" that delineates the proper timing and method of service, it is properly characterized as procedural rather than substantive. Opp'n to Mot. to Dismiss Apportionment Compl. 13, ECF No. 33. The fact that § 52-102b was meant to implement

the right to apportionment created by § 52-572h, a separate statute, is of no consequence: the statutes work together.  As stated in *Lostritto*, "[§ 52-102b] is intertwined inextricably with the broad right to apportionment created by the legislature in 1986, despite its placement in a different statutory section . . . . Accordingly, it is axiomatic that § 52-102b, which gave life to the right to apportionment provided in § 52-572h, also confers rights that did not exist at common law."  269 Conn. at 26.  This is why the *Lostritto* court found § 52-102b to be a substantive limitation on the right to apportionment, as this court did in *Estate of Nobile*, despite it also having procedural qualities like the 120-day limit that delineates proper timing and method of service for an apportionment complaint.

The government further contends that because *Lostritto* deemed § 52-102b "a service provision by its express terms," and *Corley* notes that procedural rules are ones which "regulate pleading and service of process," the statute cannot be classified as anything but a state procedural rule.  Opp'n to Mot. to Dismiss Apportionment Compl. 14, ECF No. 33.  *Lostritto* characterized § 52-102b as a "service provision" in the context of discussing whether the statute implicates personal jurisdiction or subject matter jurisdiction.  269 Conn. at 31–33.  However, in its discussion on whether the 120-day deadline is mandatory or directory, the court conducted an independent analysis of whether the statute was substantive or procedural—the same question this court is tasked with— and found it to be substantive.  *Id.* at 26.

To the extent that *Corley* requires a state law to alter substantive liability in order to apply in FTCA actions, § 52-102b does, in fact, alter the substantive liability of parties. *See Corley*, 11 F.4th 79, 86 n.3 (noting the Supreme Court's guidance that "[i]f it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is

[procedural]; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is [substantive]").

Section 52-102b governs apportionment complaints.  An apportionment complaint is a mechanism by which the defendant can shift (or, apportion,) to third-party defendants, a share of the liability resulting from the original, underlying claim.  The parties to an apportionment complaint are the defendant in the original case (who is attempting to become a third-party plaintiff) and the potential third-party defendants (whom the potential third-party plaintiff is trying to accuse of liability).  There is a 120-day deadline which applies to apportionment complaints: only those parties who are served with apportionment complaints within 120 days of the return date specified on the plaintiff's *original* complaint may be joined as third-party defendants.  Because the right to file apportionment claims did not exist at common law, § 52-102b creates, shapes, and limits a substantive right.  Accordingly, the 120-day limit satisfies the requirement that state laws must alter substantive liability to serve as the basis for FTCA actions in *Corley*.

The government argues that § 52-102b does not alter substantive liability, because it has no bearing on the standard of liability or the types of evidence required in a tort case—here, being medical malpractice.  While § 52-102b may not have any effect on the standard of liability or types of evidence required to adjudicate a medical malpractice complaint, it does have an effect of the standard of liability for an apportionment complaint. The motion to dismiss at issue here is for an apportionment complaint, therefore must be analyzed accordingly, as is done above.

Section 52-102b must be classified as a substantive rule under *Corley*. Additionally, in the time between the issuance of the *Lostritto* and the *Corley* decisions,

this court dismissed apportionment complaints for lack of personal jurisdiction based upon noncompliance with the 120-day requirement.  *Pa. Mfrs. Indem. Co,* 2012 WL 3779140, at *7.  Continuing to so rule, as guided by *Corley*, is appropriate here.

        *3.*      *§ 52-102b and Rule 14*

      In federal court, the Federal Rules of Civil Procedure control. In cases involving the addition of third parties, also known as third-party practice or impleader, Rule 14 of the Federal Rules of Civil Procedure governs.  Fed. R. Civ. P. 14.  In addition to the arguments above, the government contends that the 120-day requirement of § 52-102b cannot apply in FTCA actions on the separate ground that it conflicts with the controlling procedural rules: Rules 4 and 14 of the Federal Rules of Civil Procedure.  Opp'n to Mot. to Dismiss Apportionment Compl. 15, ECF No. 33.  The government argues that Rule 14 does not impose time limits on commencing a third-party complaint, whereas the 120-day requirement § 52-102b does.  *Id.* at 16.  However, "[f]ederal impleader [under Rule 14] cannot … operate to enlarge a third-party plaintiff's right to recovery beyond that available under the controlling substantive law."  *Andrulonis v. United States*, 26 F. 3d 1224, 1233 (2d Cir. 1994).  Under the controlling substantive law here (§ 52-102b), Defendants had 120 days to file an apportionment complaint as a third-party plaintiff.  Accordingly, allowing the United States to file its apportionment complaint beyond the 120-day window, as they are attempting to do, would expand the apportionment right beyond what is permitted by law.  To that end, although Rule 14 procedurally controls in this matter, it does not expand the right to apportionment; therefore, § 52-102b does not conflict with it, and thus its 120-day deadline applies in this matter.

Additionally, the government contends that § 52-102b conflicts with Rule 4 of the Federal Rules of Civil Procedure because it is a service provision, as well, and because Rule 4 governs the service of process in federal court.  Opp'n to Mot. to Dismiss Apportionment Compl. 16, ECF No. 33.  However, incorporated into Rule 4 are state standards for service.  For example, Rule 4(e)(1) allows service "following state law for serving a summons in an action brought to courts of general jurisdiction."  Fed. R. Civ. P. 4(e)(1).  Rule 4 allows for service that is consistent with state laws governing the service of summons, such as § 52-102b (which governs serving apportionment complaints).  Accordingly, § 52-102b is consistent with Rule 4, and it is applicable in the current action.

Because this court finds that § 52-102b is a substantive rule and that it does not conflict with the Federal Rules of Civil Procedure, it applies in the current FTCA action; any apportionment complaints must have been filed within 120 days of the return date (which, in Connecticut practice, is the date the summons was returned to federal court). *Pa. Mfrs. Indem. Co,* 2012 WL 3779140, at *7.  In this case, the summons was returned on August 13, 2021.  The 120-day window for serving an apportionment complaint therefore expired on December 11, 2021.  However, Defendant filed the apportionment complaint against Third-Party Defendants well past this deadline, on June 30, 2022. Although the government filed a consent motion on February 18, 2022, seeking the court's permission to extend (until July 1, 2022) the time in which the government would be permitted to join additional parties, *see* ECF No. 15 and even though the motion was granted by the court, *see* ECF No. 16, the motion was filed beyond the 120-day deadline to file an apportionment complaint; and the Supreme Court of Connecticut clearly has held that the deadline set forth by § 52-102b is *mandatory*.  *Lostritto,* 269 Conn. at 35

(finding that "the trial court lacked the authority to extend the time for commencing an apportionment action."). *Lostritto* applies in this instance, and it has been followed by this court (*Hon. Vanessa L. Bryant, J.*) in a similar case. *Pa Mfrs. Indem. Co.,* 2012 WL 3779140, at *7 (noting that "in cases of conflict between the statute and judicially imposed deadlines, the statutory ruling will prevail."). Accordingly, Defendant's apportionment complaint is untimely under § 52-102b, and it must be dismissed for lack of personal jurisdiction.

**B.    <u>Motion to Dismiss Plaintiff's Third-Party Claim</u>**

As for their second motion, Defendants argue that Plaintiff's Complaint should be dismissed because it is untimely. Third-Party Defs.' Mot. to Dismiss 1, ECF No. 37. Defendants arrive at this conclusion by taking Connecticut General Statute § 52-584 as the authority guiding the timeliness of Plaintiff's complaint. *Id.* Connecticut General Statute § 52-584 states, in relevant part, as follows:

> No action to recover damages for injury to the person . . . by malpractice of a physician, . . . [or] hospital . . . shall be brought but within two years from the date when the injury is discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brough more than three years from the date of the act or omission complained of . . . .

Defendants claim, and Plaintiff does not dispute, that "Plaintiff's injury was apparent by January 23, 2019." Third-Party Defs.' Mot. to Dismiss 1, ECF No. 37. Because Plaintiff's complaint was filed more than two years since the injury was first discovered, Defendants argue, the current claim is untimely and therefore should be dismissed. *Id.*

Plaintiff does not reference § 52-584, and instead bases her argument on Rule 14 of the Federal Rule of Civil Procedure, and on its relationship with Connecticut General

Statute § 52–102b(a).  *See* Pl.'s Opp'n to Third Party Defs.' Mot. to Dismiss. 1, ECF No. 38.  Plaintiff argues, as the government did, that both Rule 14(a) and § 52-102b(a) are procedural laws.  Pointing, then, to the supposed conflict between the two, Plaintiff forwards the argument that courts must use the Federal Rules in actions commenced under the FTCA.  *See id.*  According to Plaintiff, adopting the federal rule would prevent dismissal, because Rule 14 "does not contain any time limits."  *Id.* at 2.

In their reply, Defendants maintain their original argument, while adding to it that, regardless of whether § 52-102b(a) is the applicable provision, Plaintiff's complaint is untimely under § 52-584.  *See* Third-Party Defs.' Reply Mem. in Further Supp. of Their Mot. to Dismiss Pls.' Compl. 2, ECF No. 41.  First, Defendants argue that if § 52-102b is the relevant provision, Plaintiff cannot "rely on" it, because the government failed plead in compliance with that statute.  *Id.*  In other words, because the government's apportionment claim was not timely, Plaintiff's complaint is not governed by the extended statute of limitations under § 52-102b, and therefore, it is untimely under § 52-584.  *Id.*  Second, if § 52-102b is inapplicable because it is a state procedural rule, and if Federal Rule of Civil Procedure 14 must apply instead, Rule 14 remains "subject to the applicable statute of limitations," once again leaving § 52-584 as the relevant limiting statute.  *Id.* at 3 (internal citation omitted).

### 1.   *Plaintiff's Third-Party Complaint*

Despite the demand for apportionment of liability, Plaintiff's complaint will be reviewed as a direct complaint against a third-party defendant, rather than as an apportionment complaint.  Connecticut Statute § 52-102b(a) instructs that "a defendant" may serve a complaint to demand apportionment of liability.  The Supreme Court of

Connecticut also has previously confirmed that the apportionment statute, § 52-572h—with which § 52-102b(a) works in tandem—allows for a "party sued for damages" to seek apportionment from a party not named as defendant.  *Constanzo v. Plainfield*, 344 Conn. 86, 89 (2022).  As Plaintiff clearly is not the party sued for damages nor a defendant, the court finds that it is more appropriate to treat Plaintiff's filing as a complaint against a third party.[7]

The court finds that it may exercise supplemental jurisdiction to review Plaintiff's complaint, pursuant to 28 U.S.C § 1367, as this court had original jurisdiction over Plaintiff's initial suit against the government.[8]  *See* 28 U.S.C. § 1346 (granting district courts original jurisdiction in certain suits against the government); 28 U.S.C. § 1367 (granting jurisdiction to the district court to hear claims under supplemental jurisdiction). The facts surrounding Plaintiff's complaint against the government, and her complaint against Defendants, share significant overlap and are "so related" as to "form part of the same case or controversy."  28 U.S.C. § 1367.  In the absence of citation to any specific constitutional or statutory authority, the court regards this complaint as an amended complaint alleging medical malpractice, pursuant to state law, raised against *both* the government and Defendants.

---

[7] In filing the complaint, the proper procedural protocol for Plaintiff was to file a motion to leave to amend her existing complaint to include Defendants as a party because it had been well over twenty-one days since the service of the initial complaint.  *See* Fed. R. Civ. P. 15(a)(1).  As this isn't an apportionment complaint, the federal rules governing amended complaint must apply.

[8] Plaintiff's complaint incorrectly cites that this court has jurisdiction pursuant to 28 U.S.C. §§ 1345, 1346, and Federal Rule of Civil Procedure 14.  See Pl.'s Claim Against Third Party Def. ¶ 4, ECF No. 30.  Those statutes instruct grounds for jurisdiction on cases where the United States appears as a plaintiff or a defendant.  See 28 U.S.C. §§ 1345, 1346.  The United States is not a party in Plaintiff's complaint against Defendants, nor has Plaintiff demonstrated how Defendants may fall within the scope of a suit under the FTCA.  *See* Pl.'s Claim Against Third Party Def., ECF No. 30 (stating that Defendants are a "private hospital" and "a physician practicing at [the Hospital]").  Plaintiff also fails to clarify whether there are alternate sources of federal jurisdiction.

2.     _Federal Rules of Civil Procedure 14_

Federal Rule 14 guides the process of filing a complaint against third-party defendants.  *See, e.g.*, *Hua Lin v. W.D. Associates LLC*, No.3:14-cv-164(VAB), 2015 WL 5684042, at *4 (D. Conn. Sept. 28, 2015); *Netherlands Ins. Co. v. MD Plumbing & Heating, LLC*, No 3:09cv881(MRK), 2011 WL 832555, at *1 (D. Conn. Mar. 3, 2011).

Plaintiff correctly cites to Federal Rule 14, but misconstrues its requirements.  This court (*Hon. Mark R. Kravitz, J.*) has held that "any claim existing between plaintiff and third-party defendant is subject to the applicable statute of limitations; the statute is neither tolled nor waived upon the third-party defendant's entry into the action but continues to run until plaintiff factually asserts the claim against the third-party defendant, or, if the time period runs before the action is commenced, serves as a bar to the claim at the outset."  *Netherlands Ins. Co.*, 2011 WL 832555, at *2 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kaye Kane, 6 Federal Practice and Procedure § 1459 (3d ed.2023)).  In other words, the fact that Rule 14(a)(c) "does not contain any time limits," Pl.'s Claim Against Third Party Def. 2, ECF No. 30, does not suggest that parties are allowed to file against third parties at any time one party might wish.  Filing of direct claims against third-party defendants "does not revive any claims the original plaintiff may have had against [the third-party defendant] that should have been asserted earlier but have become unenforceable."  *Gouveia v. Sig Simonazzi N. Am., Inc.*, No.3:03CV597(MRK), 2005 WL 293506, at *2 (D. Conn. Jan. 11, 2005) (internal citation omitted).

Having established that Plaintiff's complaint is limited by *some* applicable statute of limitations, the court finds that Connecticut state law—and not federal law—determines the timeliness of Plaintiff's complaint.  In cases such as this, where state-law claims are

before the federal court on supplemental jurisdiction, it is "beyond cavil" that federal courts apply state limitation rules.  *Conn. Gen. Life. Ins. Co. v. Biohealth Labs, Inc.*, 988 F.3d 127, 137 (2d Cir. 2021) (holding that state statutes of limitations apply for state-law claims, regardless of whether they are brought into federal court under diversity or supplemental jurisdiction); *see Schlehofer v. United States*, No. 07-cv-271(JBA), 2008 WL 11377680 (D. Conn. May 8, 2008) (adopting the state statute of limitations in a claim against an apportionment defendant).

3.    <u>*Connecticut General Statute § 52–102b(a)*</u>

Plaintiff and Defendants differ on their understanding of which Connecticut statute of limitations would govern the instant third-party complaint.  *Compare* Third Party Defs.' Mot. to Dismiss, ECF No. 37 (arguing that § 52–584 is the relevant authority) *with* Pl.'s Opp'n to Third Party Def.'s Mot. to Dismiss, ECF No. 38 (arguing, instead, that § 52-102b(a) is the relevant authority).[9]

The court finds that § 52-584 is the applicable statute.  This is because § 52-584 is the only provision pursuant to which the court properly may exercise jurisdiction over Defendants.  Defendants have filed a timely motion to dismiss the apportionment complaint for lack of personal jurisdiction, which, for the reasons stated above, this court has granted.  The court therefore lacks personal jurisdiction over Defendants as apportionment defendants.

Dismissal of the apportionment claim does not alone lead to the dismissal of Plaintiff's claim.  *Carpenter v. Law Off. of Dressler & Assos., LLC*, 858 A.2d 820 (Conn. App. Ct. 2004) ("The jurisdiction a trial court has over an apportionment claim differs from

---

[9] Plaintiff further argues that § 52–102b(a) is a procedural rule that conflicts with Federal Rule of Civil Procedure 14.  Therefore, Plaintiff claims, Rule 14 must apply instead of § 52–102b(a).

its jurisdiction over direct claims asserted by a plaintiff against an apportionment defendant."). The court still may hold personal jurisdiction over Defendants, in a different capacity, as third-party defendants. As a suit filed against third-party defendants, Plaintiff's suit is best characterized as a malpractice claim filed under § 52-584, rather than under § 52-102b. This is because Plaintiffs cannot "plead over" the government's now-dismissed apportionment claim. *See Girolametti v. Michael Horton Assos., Inc.*, No. X06CV116011734S, 2013 WL 593909, at *2 (Conn. Super. Ct. Jan. 18, 2013). Plaintiff therefore does not receive the sixty-day extension of the statute of limitations under § 52-102b. *See Shepard v. Chelsea Square Condo. Ass'n, Inc.*, No. CV116008169, 2011 WL 6413806, at *2 (Conn. Super. Ct. Dec. 1, 2011) (describing the requirements of §52-102b(d) as an "extension of the statute of limitation").

Without the extension, Plaintiff's complaint against Defendants is untimely. Section 52-584 requires medical malpractice claims to be filed "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered" except that "no such action may be brought more than three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-584. Defendants assert, and Plaintiff does not dispute, that Plaintiff's injury "was apparent no later than January 23, 2019." Mem. of Law in Supp. of Third-Party Defs.' Mot. to Dismiss 4, ECF no. 37. From that point, Plaintiff had until January 5, 2022, in light of the state-wide tolling of statute of limitations on the account of the coronavirus pandemic. *Id.* Well past this deadline, Plaintiff filed her third-party complaint on October 28, 2022, which was then served to Defendants on November 10, 2022. *See* Pl.'s Claim Against Third Party Def., ECF No. 30; Mem. of Law in Supp. of Third-Party Defs.' Mot. to Dismiss, ECF

No. 37.  The filing therefore was untimely, and Plaintiff's complaint must be dismissed. And while the court carefully has assessed the legal merit of the arguments raised, through the objective review of all applicable law, never has it ignored the extreme sorrow and stress that accompanies any health challenges suffered by a child.  In its legal rulings and analysis, the court means not to be callous while attempting to be clear and direct.

## IV.   **CONCLUSION**

Defendant's motion to dismiss (ECF No. 28) hereby is **GRANTED** and the apportionment complaint (ECF No. 17) is **DISMISSED**.  Defendant's motion to dismiss (ECF No. 37) hereby is **GRANTED,** and the complaint against third-party Defendants (ECF No. 30) is **DISMISSED**.

**IT IS SO ORDERED** at Hartford, Connecticut, this 22nd day of September, 2023.

_____/s/_____
OMAR A. WILLIAMS
United States District Judge